IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


RAYMOND WADE                                              PLAINTIFF

        v.                          CIVIL NO. 10-5055

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                            DEFENDANT


<u>**MEMORANDUM OPINION**</u>

        Plaintiff, Raymond Wade, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claim for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  <u>See</u> 42 U.S.C. § 405(g).

**I.      Procedural Background:**

        Plaintiff protectively filed his current application for DIB on April 27, 2007, alleging an

inability to work since March 2, 2003,[1] due to pain on the right side of his body; memory loss;

anger; and no sweat glands.  (Tr. 94-96).  For DIB purposes, Plaintiff maintained insured status

through June 30, 2008.  (Tr. 66, 109).  An administrative hearing was held on April 1, 2009, at

which Plaintiff appeared with counsel and testified. (Tr. 6-48).

---

[1]Plaintiff filed a previous application for benefits on June 29, 2004, with an alleged onset date of March 2, 2003, that was denied by an ALJ after a hearing on May 22, 2006. (52-59).  The Court notes, while the ALJ did refer to the previous application, he did not alter the onset date in the current application to May 23, 2006. <u>See</u> <u>Ellis v. Barnhart</u>, 392 F.3d 988, 991 (8th Cir.2005) (finding that when an earlier application has been denied, the current disability determination is limited to the period following the most recently denied application).  Neither party argued that the onset date in the current application was incorrect.

By written decision dated October 2, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.68). Specifically, the ALJ found Plaintiff had the following severe impairments: a back disorder, status-post knee surgery, chronic obstructive pulmonary disease (COPD), and a mood disorder. However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 70). The ALJ found that prior to the expiration of his insured status, Plaintiff retained the residual functional capacity (RFC) to:

> lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant could sit for about six hours during an eight-hour workday and could stand and walk for about six hours during an eight-hour workday. The claimant could occasionally climb, balance, stoop, kneel, crouch and crawl. The claimant could frequently handle and finger. The claimant could have no exposure to extreme heat. The claimant could perform unskilled work where interpersonal contact is incidental to the work performed.

(Tr. 72). With the help of a vocational expert, the ALJ determined that prior to the expiration of his insured status, Plaintiff could perform work as a laundry worker, a sewing machine operator, and a production worker. (Tr. 76).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on February 1, 2010 (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 15-16).

## II.   Evidence Presented:

At the administrative hearing before the ALJ on April 1, 2009, Plaintiff, who was forty-

-2-

two years of age, testified that he obtained a ninth grade education. (Tr. 13). The record reflects Plaintiff's past relevant work consists of work as a short order cook, a night stocker, a cashier and a gas station attendant. (Tr. 43, 147).

The pertinent medical evidence in this case reflects the following. On August 13, 2004, Plaintiff underwent a consultative general physical examination performed by Dr. Steven Van Ore. (Tr. 284-290). Plaintiff reported he had no sweat glands and that he had migraines every day. Plaintiff reported he smoked one-half of a package of cigarettes a day. Plaintiff also reported having problems with anger and that he "doesn't see" doctors. Plaintiff reported experiencing shortness of breath with exertion. Dr. Van Ore noted Plaintiff had no upper teeth and rotten teeth "all over." Dr. Van Ore noted Plaintiff had full range of motion in his spine and extremities. Plaintiff did exhibit a positive straight leg test on the right. Upon a limb function evaluation, Dr. Van Ore reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip 75 percent; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk on heel and toes; and to squat and arise from a squatting position. Dr. Van Ore noted Plaintiff was oriented to time, person and place and that he did not see any evidence of psychosis. Dr. Van Ore reported that of all the things Plaintiff complained of the only verifiable problem was mild discomfort at L5-S1. Dr. Van Ore opined Plaintiff could walk, stand, sit, lift, carry, handle, finger, see, hear and speak without limits.

On August 19, 2004, Plaintiff underwent a consultative mental status and evaluation of adaptive functioning performed by Dr. Gene Chambers. (Tr. 171-175, 291-295). Dr. Chambers noted Plaintiff was brought to the evaluation by his wife because his license had been suspended for failure to pay some fines. Dr. Chambers noted Plaintiff did not have any top teeth and just

-3-

AO72A
(Rev. 8/82)

the frontal portion of his bottom teeth. Plaintiff reported his body did not perspire and cool itself so he constantly had to pour water on himself to cool himself. Plaintiff also reported problems with his right leg, hip, shoulder and wrist. Dr. Chambers noted Plaintiff began to cry when he reported that he hurt all the time and jumped all over his family for nothing. Plaintiff also reported he had lost his hearing in his right ear. Plaintiff reported he had a terrible childhood and dropped out of school after the ninth grade to work to support himself. Dr. Chambers noted Plaintiff had been married to his third wife for two years. Plaintiff reported he smoked one-half of a package of cigarettes a day. Plaintiff denied the use of recreational drugs. Dr. Chambers estimated Plaintiff's IQ to be 80 or greater. Dr. Chambers noted that while Plaintiff did not report memory as problematic, Plaintiff did have some difficulties with memory. Dr. Chambers diagnosed Plaintiff with Axis 1: dysthymia; Axis IV: education and occupational problems: and Axis V: GAF 62. Dr. Chambers noted Plaintiff communicated effectively and was easily understood; however, Plaintiff had some mild articulation problems due to his limited number of teeth. Plaintiff reported that he did not have problems with actually doing his personal care; however, he just had no desire to do it. Dr. Chambers noted no physical problems or limitations were observed. Plaintiff's concentration, persistence and pace were noted as within normal limits.

On August 31, 2004, Dr. Jerry Henderson, a non-examining medical consultant, completed a psychiatric review technique form indicating Plaintiff had mild restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration persistence or pace; and no episodes of decompensation. (Tr. 300-313).

-4-

On the same date, Dr. Henderson completed a mental RFC assessment stating that Plaintiff has moderate limitations in the following areas: in his ability to understand and remember detailed instructions; in his ability to carry out detailed instructions; in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and in his ability to set realistic goals and make plans independently of others.  (Tr. 297-299).  Dr. Henderson opined that Plaintiff was "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgement; supervision required is simple, direct and concrete." (Tr. 298).

On October 27, 2004, Dr. Kathryn M. Gale, a non-examining medical consultant, recommended Plaintiff undergo another mental evaluation as Plaintiff's activities of daily living appeared to have markedly changed.  (Tr. 318).

On November 19, 2004, Plaintiff underwent a consultative mental status evaluation and evaluation of adaptive functioning performed by Dr. Scott McCarty.  (Tr. 319-323).  Dr. McCarty noted Plaintiff's wife had driven him to the evaluation site and filled out all of Plaintiff's paperwork because Plaintiff indicated he did not understand half of "the stuff." Plaintiff was noted to be slovenly dressed in dirty clothes and exhibited poor grooming and hygiene.  Dr. McCarty noted Plaintiff was cooperative, yet sullen, angry and irritable.  Plaintiff and his wife reported a deterioration in his health since the denial of his previous application for

-5-

benefits.  Plaintiff reported he was not taking any medications.

Dr. McCarty opined that Plaintiff would have considerable difficulty responding appropriately to supervisors and coworkers given Plaintiff's significantly hostile and negative mood.  Dr. McCarty noted Plaintiff appeared capable of working by himself but not under supervision.  Dr. McCarty noted Plaintiff appeared capable of understanding, remembering and carrying out instructions.  With regard to attitude and behavior, Dr. McCarty noted Plaintiff exhibited significant entitlement and blamed others for his own problems.  Dr. McCarty noted that Plaintiff reported striking his son the previous night.  Plaintiff's wife informed the examiner that Plaintiff attempted to strike her son after her son had kicked Plaintiff in the groin.  Dr. McCarty noted that he made a call to child services as he was obliged to do.  With regard to memory, Dr. McCarty found Plaintiff's inability to remember his phone number and certain high profile individuals was incredulous and not believable. Dr. McCarty diagnosed Plaintiff with the following: Axis I: major depression, single episode, moderate (superimposed on dysthymia), dysthymic disorder, pain disorder associated with psychological factors, and polysubstance dependence, in sustained full remission (he claims); Axis II: antisocial personality disorder (primary), and borderline personality traits: Axis V: GAF = 50.  Dr. McCarty stated that he "could not be sure that [Plaintiff] did not exhibit signs of malingering and/or exaggeration at times."

On July 25, 2006, Plaintiff entered the Northwest Medical Center of Washington County emergency room complaining of congestion, shortness of breath, chest pain and a fever.  (Tr. 176-183). Plaintiff reported he had a new job at Tyson. Plaintiff was noted to ambulate without difficulty, to speak with nasal congestion and to have a strong body odor.  Plaintiff requested a

AO72A
(Rev. 8/82)

note for work for one week. Chest x-rays were normal. (Tr. 183). Plaintiff was diagnosed with pneumonia and sinusitis and prescribed medication. Plaintiff was also given a note excusing him from work on July 25th and July 26th.

On August 10, 2007, Plaintiff underwent a consultative general physical examination performed by Dr. Randy Conover. (Tr. 184-190). Plaintiff reported his main difficulty with working was his inability to work with others; his inability to sweat; and his right knee and back pain. Plaintiff reported his medication consisted of ibuprofen as needed. Upon examination, Dr. Conover noted Plaintiff had poor hygiene and grooming. Dr. Conover noted Plaintiff could hear a normal conversation but estimated Plaintiff had a 5% auditory loss. Dr. Conover noted Plaintiff had poor dentition and multiple carries. Dr. Conover noted Plaintiff had normal range of motion of the spine and extremities. Plaintiff did not exhibit muscle weakness, muscle atrophy or sensory abnormalities. With regard to gait and coordination, Dr. Conover noted Plaintiff had a limp to the right. Upon a limb function evaluation, Dr. Conover reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip 90+ percent; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk on heel and toes; and to squat and arise from a squatting position. With regard to Plaintiff's mental functioning, Dr. Conover stated "A & O x 3[2] Alert & cooperative minimental wnl." Dr. Conover did not find any evidence of psychosis or serious mood disorder. Dr. Conover reviewed x-rays of Plaintiff's right hand and right knee. Plaintiff was diagnosed with right knee pain status post surgery, back pain, history of migraine, depression, poor reading/writing ability, mild decreased hearing in right ear, COPD, and history of dysfunctional sweat glands. Dr. Conover opined

---

[2]Alert and oriented to time, person and place.

Plaintiff could handle, finger, see and speak; that Plaintiff had mild limitations with walking, standing, sitting, and hearing; and that Plaintiff had moderate limitations with lifting and carrying.

On August 27, 2007, Dr. Jerry Mann, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb, balance, stoop, kneel, crouch and crawl; and that manipulative, visual, communicative or environmental limitations were not evident. (Tr. 191-198). After reviewing all the evidence, Dr. Bill F. Payne affirmed Dr. Mann's findings on January 10, 2008. (Tr. 244).

On September 7, 2007, Plaintiff underwent a consultative mental status and diagnostic evaluation performed by Dr. Denise LaGrand.  (Tr. 201-207).  Plaintiff reported that he got irritated with people because he thought they were looking at him when they were not.  Plaintiff reported his problems with memory loss began in 2000 and his difficulty moving began in 2003. Plaintiff indicated that his paranoia caused him to have no patience with people and his memory problems made it difficult to stay focused on tasks.  Plaintiff reported his physical problems caused pain when he stood, walked or bent.  Plaintiff reported he had a great deal of difficulty feeling comfortable because he had no sweat glands.  Plaintiff denied receiving any mental health treatment. Dr. LaGrand noted Plaintiff was not taking any medications.  Plaintiff reported he did not receive regular medical care and that his last medical problem was pneumonia in 2006. Plaintiff reported he was unable to hear with his right ear and that the hearing in his left ear was

AO72A
(Rev. 8/82)

diminished.  Dr. LaGrand noted Plaintiff had not had his hearing professionally tested.  Plaintiff reported that he no longer drove because he had trouble turning his head and he could not grip the steering wheel.  Dr. LaGrand noted Plaintiff's hygiene was disheveled.  Dr. LaGrand did not observe any noticeable physical handicaps and Plaintiff's posture and gait were normal. Plaintiff's facial expressions and eye contact were noted as appropriate.

Dr. LaGrand noted Plaintiff was cooperative, alert and responsive to his surroundings and his examiner.  No limitations in speech or language were observed and Plaintiff was able to adequately express himself.  Dr. LaGrand noted Plaintiff did not complete the written portion of the history.  Dr. LaGrand noted Plaintiff's thoughts were organized, logical and goal directed and Plaintiff was able to stay focused on the exam. Plaintiff reported his typical mood was sad, depressed, angry and anxious. Dr. LaGrand estimated Plaintiff's IQ to be in the low average range (80 or higher). Dr. LaGrand opined that Plaintiff's judgment was estimated to be adequate. Plaintiff was diagnosed with "major depressive disorder, mild, moderate, severe with without psychotic features" and gave Plaintiff a GAF score of 50-60.  With regard to adaptive functioning, Dr. LaGrand noted Plaintiff did not sleep well at night so he spent much of his day sleeping.  Dr. LaGrand noted Plaintiff had no motivation to keep clean, dress himself or fix and eat adequate meals.  Dr. LaGrand opined Plaintiff's memory skills during the exam appeared to be adequate and he had no significant problems with persistence and pace.  Dr. LaGrand pointed out that Plaintiff's physical problems were beyond her scope for the evaluation but noted that a combination of mental and physical impairments leads to a greater impairment, making success in a job setting less likely.  Dr. LaGrand stated the following:

From a psychological standpoint, based on his reported symptoms, history, and

-9-

performance on this exam, his ability to perform adequately in most job
situations, handle the stress of a work setting and deal with supervisors or co-
workers is estimated to be low average.

(Tr. 206).

On October 17, 2007, Dr. Kay Cogbill, a non-examining medical consultant, completed

a psychiatric review technique form indicating Plaintiff had mild restrictions of his activities of

daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of

concentration persistence or pace; and no episodes of decompensation. (Tr. 209-222).  Dr.

Cogbill's notes indicate the following:

MER support a diagnosis of major depressive disorder. Clmt alleges problems
with intellect, but this is not supported by his fairly extensive work history. ALso
(sic), at msce, IQ is estimated at 80 or greater and at another msce, is estimated
as low average.  There is not evidence of marked or severe impairment in af.
Rating is unskilled.

(Tr. 221).

On the same date, Dr. Cogbill also completed a mental RFC assessment stating that

Plaintiff has moderate limitations in the following areas: in his ability to carry out detailed

instructions; in his ability to maintain attention and concentration for extended periods; "in his

ability to sustain an ordinary routine without special supervision without being distracted by

them;"  in his ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods; in his ability to accept instructions and respond appropriately

to criticism from supervisors; in his ability to respond appropriately to changes in the work

setting; and in his ability to set realistic goals or make plans independently of others. (Tr. 223-

226).  Dr.  Cogbill opined that Plaintiff is "able to perform work where interpersonal contact is

-10-

incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgement; supervision required is simple, direct and concrete. (unskilled)" (Tr. 225). After reviewing all the evidence, Dr. Dan Donahue affirmed Dr. Cogbill's findings on January 15, 2008. (Tr. 245).

A Pulmonary Function Report dated January 3, 2008, reported Plaintiff had mild restrictive lung disease by spirometry. (Tr. 230-234).

In diagnostic interview notes from Ozark Guidance, Inc, dated February 28, 2008, Plaintiff reported that he had problems with anger. (Tr. 236-243). Plaintiff also reported that things happened to him as a child that still bothered him. Ms. Rachael Motley, MHPP, noted Plaintiff reported feeling depressed and bored most days. Plaintiff reported having sleeping difficulties and that he felt worthless because he could not keep a job to support his family. Plaintiff reported he was run over by a car at a young age and indicated both physical and emotional problems stemming from the accident. Plaintiff reported his anger was his main concern and that it was the real reason he was seeking treatment. Ms. Motley noted Plaintiff's reports of paranoid delusions since 2004 or 2005. Plaintiff stated he no longer drove and avoided social settings like the grocery store and his son's activities. Plaintiff reported he had not held a steady job since 2000 and attributed this to his physical health and anger problems. Plaintiff reported he was "bad" at reading and had a bad memory but he was a good cook. Plaintiff reported that it was hard finding a job that suited his abilities. Plaintiff reported a suicide attempt two years ago and, while he had thoughts of suicide, he would not act on them. Plaintiff reported occasional marijuana use, one time a week, to help with his pain. He reported he used meth in the past but was not currently using it. Plaintiff indicated he had an appointment with St. Francis

-11-

House for his medical concerns.  Ms. Motley noted she gave Plaintiff the "recommended treatment" along with other documents to review.

### III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3),

AO72A
(Rev. 8/82)

1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. § 404.1520.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520.

IV.    **Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled prior to June 30, 2008, his date last insured.  Defendant argues substantial evidence supports the ALJ's determination.

A.    **Insured Status:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability.  42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on June 30, 2008.  Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of March 2, 2003, his alleged onset date of disability,

-13-

through June 30, 2008, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984).

### B.   Subjective Complaints and Credibility Analysis:

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff's contends that his impairments were disabling prior to the expiration of his insured status, the evidence of record does not support this conclusion.

With regard to Plaintiff's alleged knee, hip and back pain, the medical evidence fails to

-14-

show that Plaintiff sought consistent treatment for this alleged pain or that he took prescription pain medication. See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment is inconsistent with allegations of pain); Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001) (concluding that an ALJ may reasonably discredit a claimant's testimony about disabling pain when the claimant takes nothing stronger than over-the-counter medications to alleviate her symptoms). It is also noteworthy that in 2004, Dr. Van Ore opined that Plaintiff could walk, stand, sit, lift, and carry without limits. In 2007, Dr. Conover found Plaintiff had normal range of motion in his spine and extremities. Dr. Conover also reviewed a knee x-ray that revealed decreased joint space and hardware; however, Dr. Conover opined Plaintiff would have mild limitations with walking, standing and sitting and moderate limitations with lifting and carrying. Based on the evidence of record, we find substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling knee, back or hip impairment.

With regard to Plaintiff's COPD, the medical evidence again fails to show Plaintiff sought on-going and consistent treatment for this impairment. Novotny, 72 F.3d at 671. Plaintiff did undergo a pulmonary function test in January of 2008, which showed mild restrictive lung disease by spirometry. The record also shows that, despite Plaintiff's alleged breathing difficulties, he continued to smoke at least one-third of a package of cigarettes a day. Based on the evidence of record, we find substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling respiratory impairment.

Plaintiff also alleged problems with dysfunctional sweat glands, migraine headaches, and ringing in his ears. With regard to Plaintiff's sweat glands, there is no evidence of record revealing that a medical professional has limited Plaintiff due to his alleged sweat gland problem.

-15-

The ALJ did credit Plaintiff's testimony that he could not be exposed to extreme heat and included this limitation in the RFC finding. With regard to Plaintiff's headaches, the record reveals that Plaintiff did report to Dr. Van Ore in 2004 that he was experiencing migraine headaches every day; however, the evidence reveals that Plaintiff did not seek consistent treatment for these alleged headaches and took only over-the-counter medication when one occurred. As for Plaintiff's alleged hearing impairment, in 2007, Dr. Conover noted Plaintiff could hear normal conversation but estimated Plaintiff had a 5% auditory loss. There is no medical evidence indicating that Plaintiff has a more significant hearing loss than that found by Dr. Conover. Based on the evidence of record, we find substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling migraine, auditory or endocrine impairment.

With regard to Plaintiff's mental impairments, the ALJ noted that Plaintiff underwent consultative mental examinations in August of 2004, November of 2004, and September of 2007. The ALJ pointed out that there was no evidence that Plaintiff had ever taken any psychotropic medications and that Plaintiff underwent a diagnostic interview at Ozark Guidance in February of 2008 but never returned for follow up treatment. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). During the most recent consultative exam in 2007, Dr. LaGrand noted Plaintiff was cooperative, alert and responsive to his surroundings and his examiner. No limitations in speech or language were observed and Plaintiff was able to adequately express himself. Dr. LaGrand noted Plaintiff did not complete the written portion of the history. Dr. LaGrand noted Plaintiff's thoughts were organized, logical and goal

-16-

directed and Plaintiff was able to stay focused on the exam. Plaintiff reported his typical mood was sad, depressed, angry and anxious. Dr. LaGrand estimated Plaintiff's IQ to be in the low average range (80 or higher). Dr. LaGrand opined that Plaintiff's judgment was estimated to be adequate; that Plaintiff's memory skills during the exam appeared to be adequate; and that he had no significant problems with persistence and pace. Dr. LaGrand opined that Plaintiff's ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers was estimated to be low average. The ALJ also addressed Plaintiff intellectual functioning and pointed out that while an intake examiner estimated Plaintiff's IQ to be borderline in 2008, three mental health professionals all opined Plaintiff's intellectual functioning to be 80 or greater. It is also noted that Plaintiff was able to perform the duties of a cook for about twenty years and claimed to have stopped working due to having difficulties with being overheated not because he was unable to mentally handle the job. (Tr. 14). Based on the evidence of record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

Furthermore, while Plaintiff alleged an inability to seek mental health treatment due to a lack of finances, the record was void of any indication that Plaintiff had attempted to seek treatment at a free clinic or had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). It is also noteworthy that the February of 2008 notes from Ozark Guidance indicate Plaintiff was referred to St. Francis house but there are no records of treatment from St. Francis House. In fact, there is no medical evidence revealing that Plaintiff

-17-

AO72A
(Rev. 8/82)

sought treatment at any free clinic during the relevant time period.

With regard to the testimony of Plaintiff's wife, the ALJ properly considered her testimony but found it unpersuasive.  This determination was within the ALJ's province.  See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

With regard to activities of daily living, Plaintiff testified at the administrative hearing that he did not do any household chores. Plaintiff explained that he is capable of doing household chores, he just does not have any ambition to do them.  (Tr. 24).  Plaintiff testified he spent his day sitting in front of the computer playing card games.  The record also reveals that when Plaintiff sought treatment for pneumonia and sinus issues in July of 2006, Plaintiff requested a leave from work for a week but was given leave for two days.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C.    RFC Assessment:

We next turn to the ALJ's assessment of Plaintiff's RFC.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of  his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional

-18-

capacity is a medical question." <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." <u>Lewis v. Barnhart</u>, 353 F.3d 642, 646 (8th Cir. 2003).  However, "it is the ALJ's function to resolve conflicts among 'various treating and examining physicians.'" <u>Bentley v. Shalala</u>, 52 F.3d 784, 787 (8th Cir. 1995).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." <u>Id</u>.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform light work with limitations.  Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on his activities that would preclude performing the RFC determined.  <u>See</u> <u>Hutton v. Apfel</u>, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). The ALJ clearly took into account limitations set forth by the consultative examiners as well as Plaintiff's report that he had difficulty with exposure to extreme heat.  Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

**D.      Hypothetical Question to the Vocational Expert:**

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  <u>See</u> <u>Long v. Chater</u>, 108 F.3d 185, 188 (8th Cir. 1997); <u>Pickney v. Chater</u>, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational

-19-

AO72A
(Rev. 8/82)

expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff was not disabled prior to the expiration of his insured status as he was able to perform work as a laundry worker, a sewing machine operator, and a production worker.  See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### E.   Fully and Fairly Develop the Record:

We reject Plaintiff's contention that the ALJ failed to fully and fairly develop the record. While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir.2000), the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

### V.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 4th day of May 2011.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-20-